ESTERLY v
YOUNGSTOWN ARC ENGRAVING CO

Ohio Appeals, 7th Dist, Mahoning Co

No 2355.  Decided April 16, 1937

Hahn, Williams & Shermer, Youngstown, for plaintiff-appellee.

Manchester, Ford, Bennett & Powers, Youngstown, for defendant-appellant.

## OPINION

By NICHOLS, J.

Plaintiff recovered a judgment in the Court of Common Pleas of Mahoning County against the defendant for injuries alleged to have been received by reason of an automobile collision at the intersection of State Route No. 7 with the county road known as the Columbiana-New Waterford Road. The cause is in this court on appeal on questions of law.

In her petition plaintiff alleged, in substance, that on the 20th of August, 1935, she was riding in the rear seat of an automobile being operated in a westerly direction over and along the Columbiana-New Waterford road and approaching state route No. 7, at which time Karl M. Midney, the sales manager of defendant, while in the scope and course of his employment, was operating an automobile in a southerly direction over and along state route No. 7 toward the intersection of these highways; that these two automobiles came into collision at the intersection, and as a direct result thereof she sustained certain personal injuries. The plaintiff charged the defendant, through its authorized agent, with the following specifications of negligence:

"First: In operating said automobile at an excessive, unlawful and dangerous rate of speed, to-wit: sixty (60) to seventy (70) miles per hour;

"Second: In operating said automobile at a rate of speed that was greater than was reasonable and proper, having regard to the traffic, use and condition of the said highways at the time and place aforesaid.

"Third: In failing and neglecting to keep a lookout for other vehicles in the lawful use of said highway at said time and place, and especially the automobile in which plaintiff was a passenger;

"Fourth: After defendant saw, or by the exercise of ordinary care should have seen the presence and position of the automobile in which plaintiff was a passenger on or near said intersection; and at a time when she was in a position of peril from which she could not extricate herself in the exercise of ordinary care; and after defendant saw or in the exercise of ordinary care should have seen and when there was yet time and opportunity for defendant in the exercise of ordinary care to avoid said collision, defendant, nevertheless, failed and neglected to stop its said automobile or to abate the speed thereof, or to use any care whatsoever in season to avoid the said collision, although by the exercise of ordinary care it could have done so."

The defendant in its answer admitted the agency of Karl M. Midney and that at the time alleged in the petition its agent was operating an automobile owned and maintained by him in a southerly direction over and along state highway No. 7, at which time such automobile came into collision with another automobile in which plaintiff was riding at or near the intersection of these two roads. Further answering, defendant denied each and every other allegation in plaintiff's petition.

Defendant seeks to set aside the judgment rendered against it in the Common Pleas Court, and contends as follows:

"First: Appellant is entitled to a final judgment; and
'Second: Appellant is entitled to a reversal:
"(1' On the weight of the evidence;
"(2) Error in the court's charge;
"(a) In failing to submit the question of plaintiff's driver's agency to the jury;
"(b) In giving before argument plaintiff's requests to charge numbered one and numbered two;
"(c) In failing to give defendant's request;
"(d) In failing to give before argument defendant's request numbered three;
"(e) Error of the court in submitting the question of defendant's excessive speed to the jury; and
"(f) Error of the court in submitting plaintiff's third specification of negligence to the jury."

State route No. 7 is a main thoroughfare, extending from Conneaut to Cincinnati, Ohio, and at the point of the collision is an improved concrete highway,. eighteen feet in width, with a berm of about three feet on either side. The Columbiana-New Waterford road is an improved county road, paved with concrete, sixteen feet wide. At the time of the collision the automobile driven by Midney was proceeding in a southerly direction and the automobile in which plaintiff was riding was proceeding in a westerly direction. It, therefore, appears that the automobile operated by Midney, if proceeding in a lawful manner, had the right of way over the automobile in which plaintiff was riding at the time the cars approached the intersection.

It is the claim of the appellant that there is no evidence in the record from which reasonable minds could find otherwise than that Midney was operating his automobile in a lawful manner as he approached the intersection and that it was, therefore, the duty of the trial court to sustain the motion made by defendant at the conclusion of plaintiff's evidence as well as the motion made by defendant at the conclusion of all the evidence and direct a verdict for the defendant. It must be conceded that Midney had a right to proceed uninterruptedly across the intersection if his automobile was being operated in a lawful manner, and that the burden was upon the plaintiff in this case to show that Midney forfeited the right of way by operating his automobile in some unlawful manner at the time, and unless this burden has been met by plaintiff there could be no finding of negligence upon the part of defendant which was a direct and proximate cause of plaintiff's injuries, even though it be conceded that plaintiff was a passenger in the automobile of her husband which was being driven at the time by her daughter. It may here be stated that no showing has been made in this case by plaintiff that the automobile of Midney was being operated in an unlawful manner at the time unless the evidence is sufficient for the jury to find that Midney's automobile was violating the provisions of §12603, GC, relating to speed. No witness on behalf of plaintiff testifies to having seen the automobile driven by Midney until the same was within one hundred feet of the intersection, and no witness for plaintiff estimates the speed at which Midney's car was traveling. Midney testified that when he was five hundred feet back from the intersection he was traveling approximately forty miles an hour; that as he approached the intersection he took his foot off the accelerator and slowed down to about twenty-five or thirty miles an hour; that he saw the automobile in which plaintiff was riding when it was within twenty-five feet of the center of the intersection and when his automobile was an equal distance from the center of the intersection, at which time he testifies he estimated the speed of the automobile in which plaintiff was riding at about the same as his own speed.

It is shown by the evidence that as the automobile in which plaintiff was riding approached the intersection it was being operated on the right hand side of the Columbiana-New Waterford road; that it did not come to a full stop before entering the intersection; that it passed over the east half of route No. 7 and was on the west half thereof when it was struck squarely in the center by Midney's automobile. All of the witnesses for plaintiff testified that the automobile in which she was riding was being operated in second gear at about ten miles per hour as it approached the intersection; that it slowed down to about three miles per hour just as it entered the intersection and then went a little faster, but not over seven miles per hour, as it proceeded across No. 7 highway.

Plaintiff and the driver of the car in which she was riding both testified that they looked to the right when they came to the intersection and before proceeding across the same, and did not see Midney's car until immediately preceding the time of the collision. By reason of the fact that a field on the east side of route No. 7 and north of the intersection was planted with corn at the time, plaintiff and her daughter testified that they could see to the right a distance of about four hundred feet, although from the evidence the jury could find that if the driver of the car in which plaintiff was riding had looked to the right immediately before she attempted to cross the paved portion of route No. 7, she could have seen a distance of approximately fifteen hundred feet; so that it seems apparent from the evidence that the driver of the car in which plaintiff was riding did not look effectively to the right before attempting to cross No. 7 highway, and we fail to see how the jury could find otherwise than that the driver of the car in which plaintiff was riding was negligent in failing to yield the right of way to the automobile of Midney if the speed of Midney's automobile was not such as to constitute a violation of §12603, GC. If, however, Midney was proceeding in violation of this section, then each of these drivers was relegated to the rules of the common law and in that event the jury could find that both drivers were negligent in the operation of their respective motor vehicles at the time and place and that plaintiff's injuries were the result of the concurrent negligence of both drivers. In this event we could not find the verdict of the jury manifestly against the weight of the evidence, unless it further appear, as claimed by defendant, that at the time and place in question the daughter was operating the automobile in which plaintiff was riding as the agent of the plaintiff.

One of the claimed errors in this case is based upon the refusal of the trial court to submit the following written request of defendant to charge the jury before argument, to-wit:

"I say to you as a matter of law that, under the circumstances in this case, the defendant had the right of way which means that the defendant had the right to proceed uninterruptedly in the direction in which he was going, and that it was the legal duty of the driver of the car in which plaintiff was riding to yield such right of way to the defendant."

Whether this requested charge should have been given by the trial court presents the same question as to whether the trial court should have sustained defendant's motions for directed verdict, for if the evidence is such that reasonable minds could find from the evidence that Midney was not proceeding in a lawful manner, then it was the province of the jury to determine whether the defendant had the right of way.

It is claimed on behalf of defendant that because no witness for plaintiff testified that defendant's automobile was being driven at a rate of speed which was prima facie unlawful, to-wit, in excess of forty-five miles per hour, there was no question for the jury in this case. We are unwilling to hold that the speed of defendant's car is to be determined solely from estimates put thereon by witnesses who saw the car at the time. In fact, it is the belief of the writer of this opinion that the estimates of speed made by witnesses who observe an approaching car are the least reliable means of finding such speed. On the other hand, the force exerted when one automobile comes in contact with another, evidenced by the physical damage inflicted, the effect of the collision with relation to the distance both automobiles proceed after the collision, the presence or absence of skid marks on the highway, the fact that the automobile is approaching a known highway intersection, traffic approaching the intersection being obscured from view, whether or not a lookout was kept under the circumstances, the use being made of the highway by others at the time, and, perhaps, other circumstances, may more clearly indicate to a jury whether speed of the automobile was violative of the provisions of §12603, GC. A speed of less than forty-five miles per hour may be unlawful under certain circumstances.

The evidence in the case at bar indicates the damage to the car in which plaintiff was riding; that the force of defendant's car was such as to bend the frame of the car in which plaintiff was riding as much as eight inches out of alignment; indicates the position of both cars on the highway immediately after the collision; indicates that no skid marks were on the highway; that defendant was familiar with this intersection and knew that the ap-

proach to the intersection was obscured by the field of corn; and from all the circumstances shown by the evidence, and so hold that it was a question of fact for the jury to determine from the evidence whether defendant's automobile was proceeding at an unlawful rate of speed at the time of the collision, and it follows that the motions of defendant for directed verdict were properly overruled and the trial court did not err in refusing to give before argument defendant's request numbered three, above quoted, and did not err in submitting to the jury the question of defendant's unlawful speed. In this connection we are cited by counsel for appellant to the case of **Cavanaugh v Pritchard, 18 Abs 354,** decided by this Court of Appeals and reviewed by the Supreme Court, wherein the decision of this court was affirmed without opinion, **129 Oh St 542.** It is contended by counsel for appellant that the facts in the case at bar are almost identical with those in the Cavanaugh case, wherein this court found, as shown by the journal, that reasonable minds must necessarily conclude that the collision and resultant injury were caused and brought about by the sole negligence of the driver of defendant in error's car, and that reasonable minds must necessarily conclude that there is no evidence of negligence on the part of plaintiff in error. We are not now reviewing the case of Cavanaugh v Pritchard, supra, but all the members of this court as now constituted agree that the trial court in the case at bar committed no error in submitting to the jury, under the facts disclosed in the record herein, the question whether defendant's speed was unlawful. We may say that the credit to be given to the testimony of the witnesses is for the jury and not for this court, except to the extent that the reviewing court may properly determine whether the verdict is manifestly against the weight of the evidence. A finding that the verdict is manifestly against the weight of the evidence would not warrant final judgment in this court. We do not find the verdict in this case to be manifestly against the weight of the evidence.

As authority for defendant's request numbered three, we are cited to the case of **Morris v Bloomgren, 127 Oh St 147, 187 NE 2.** As we interpret this case it is authority for the position which we take here to the effect that defendant's car was entitled to the right of way at this intersection only in the event it was proceeding in a lawful manner.

The third syllabus in Morris v Bloomgren, supra, clearly states that the phrase "in a lawful manner" found in §6310-28, GC, is a "sine qua non" (an indispensable condition) "obligation placed upon the vehicle upon which the right of way is conferred. If such vehicle is not proceeding in a lawful manner in approaching or crossing the intersection, but is proceeding in violation of a law or ordinance, such vehicle loses its preferential status and the relative obligations of the drivers of the converging vehicles are governed by the rules of the common law."

This cited case impresses the fact that the traffic sections were enacted for the protection of the traveling public and are designed to be obeyed. This means that they are to be obeyed by the drivers of both vehicles. In the opinion in the Morris case it is stated:

"In this connection it must be borne in mind that the privileged right of way is granted only to those who proceed 'in a lawful manner.' If the privileged occupant of the right of way is not so proceeding, if at the time of approaching or crossing the intersection he is driving at an unlawful, excessive speed, or if he should be found violating §12603 GC, * * * such driver would not be proceeding in a lawful manner, and could not claim the preference given him by the quoted traffic sections. * * * The phrase 'in a lawful manner' is the pole star of the traffic sections."

As stated in the opinion in Morris v Bloomgren, supra, one of the issues in that case was whether the vehicle on the right operated by Morris was being driven in a lawful manner, and it was held that under the circumstances the question was for the jury. The case at bar presents the same issue and under the circumstances it was for the jury to determine whether the defendant's car was proceeding in a lawful manner.

The court gave to the jury before argument plaintiff's request numbered one as follows:

"The court says to you as a matter of law that in determining the issues in this case it is your legal duty to take into consideration the fact that the plaintiff, Vera Esterly, was a passenger in the automobile involved in this accident and you are not

permitted to impute, or, in other words, charge to the plaintiff, Vera Esterly, the negligence, if any, of the driver of the automobile in which plaintiff was a passenger."

The correctness of this charge depends upon whether there is any evidence in this case from which reasonable minds could determine that at the time and place of this collision the daughter was operating the automobile in which plaintiff was riding as the agent of the plaintiff.

The court likewise refused the defendant's requests to charge numbered one and two before argument, both bearing upon the same question. Number one is as follows:

"If you find from a preponderance of the evidence that the plaintiff's daughter was at the time of this collision operating said automobile for the benefit of the plaintiff and subject to plaintiff's direction and control, then the daughter is the agent of the plaintiff and if you so find, you must return a verdict for the defendant."

Defendant's request to charge numbered one, last above quoted, was properly refused by the trial court because it would require the jury to find for the defendant even though the jury should find that the daughter was not negligent and should find that the defendant was negligent in a manner directly and proximately causing plaintiff's injuries. In other words, it told the jury to find for the defendant solely because the daughter was the agent of plaintiff in the operation of the automobile at the time and place. Clearly this charge was not good law even in the event the evidence gave rise to a charge upon the subject of agency.

Defendant's request to charge numbered three is as follows:

"If you find from a preponderance of the evidence that the plaintiff's daughter was at the time of the collision operating said automobile for the benefit of plaintiff and subject to plaintiff's direction and control, then the daughter is the agent of the plaintiff, and if you find further by the preponderance of the evidence that the daughter failed to exercise ordinary care in the premises, and that such failure contributed in any degree to the plaintiff's injuries, then the plaintiff can not recover and your verdict must be for the defendant."

The trial court did not err in refusing to give this charge. In the first place, the charge omits an essential element in that it fails to say that the failure of the daughter to exercise ordinary care in the premises is such as to directly and proximately contribute in any degree to plaintiff's injury. In the second place, as we have hereinabove found, there is no evidence in the record making a charge upon the subject of agency applicable. In the case of **Kroger Grocery & Baking Co. v Poling, 17 Abs 49**, it is held that the failure to exercise ordinary care must directly and proximately contribute in at least the slightest degree to plaintiff's injuries.

The trial court gave to the jury before argument plaintiff's request numbered two, which is as follows:

"The court says to you as a matter of law, that if you find by the greater weight of the evidence that the defendant, The Youngstown Arc Engraving Company, by and through its authorized agent, was guilty of any one or more of the negligent acts alleged in plaintiff's petition, and that you further find that the driver of plaintiff's automobile may have been guilty of negligence, and you further find by the greater weight of the evidence that the combined negligence of the drivers of both cars proximately caused and brought about this accident, and the plaintiff, Vera Esterly, exercised ordinary care, then your verdict must be for the plaintiff, Vera Esterly."

It is apparent that if there is no evidence in the record from which the jury would be authorized in determining that the daughter at the time and place was the agent of the mother in the operation of the motor vehicle in which plaintiff was riding then the trial court did not err in giving plaintiff's request numbered one and plaintiff's request numbered two.

We have examined the record in this case very carefully to determine whether there is any evidence therein requiring the court to submit to the jury the question whether the daughter at the time and place was operating the automobile in which plaintiff was riding as the agent of plaintiff and from this examination we are unable to find any evidence from which the court would have been authorized in submitting this question to the jury, and it follows that the request to charge is not

applicable to the evidence and that the trial court did not err in the matter of these charges.

Plaintiff's third specification of negligence sets forth a failure of duty upon the part of defendant to keep a  lookout for plaintiff's car as defendant approached the intersection, and complaint is made that the trial court erred in submitting this third specification of negligence to the jury. Since we have found that the evidence in this case was such as to present a question of fact for the determination of the jury as to the unlawful speed of the defendant, and in the event the jury should find that defendant was not proceeding in a lawful manner as its automobile approached this intersection, defendant thereby forfeited the right of way which he otherwise would have had, then, in that event the drivers of these two motor vehicles were relegated to the rules of the common law and the question whether the defendant maintained a proper lookout as he approached the intersection was a matter for the consideration of the jury in determining the issue under the rules of the common law. we see no error in the trial court submitting this specification of negligence to the jury. In this connection it may be well to refer to the fact that counsel for defendant concedes in brief filed herein that the car in which plaintiff was riding was not traveling at a greater speed than about seven and one-half miles per hour at the time of the collision and immediately before entering the intersection, yet the defendant testifies that he did not see the car in which plaintiff was riding until it was twenty-five feet from the center of the intersection, and he testifies that at that time his car was, likewise, twenty-five feet north of the intersection. Defendant concedes that he was driving twenty-five to thirty miles an hour, and it seems apparent that his testimony can not be correct for the reason that his speed was approximately four times that of the car in which plaintiff was riding. and if both cars were an equal distance from the center of the intersection at the same time, then defendant's car would have passed over the intersection before the car in which plaintiff was riding arrived at the intersection; whereas the car in which plaintiff was riding, on the proper side of the county road, arrived at the point of collision before the car of defendant. This testimony of defendant may have caused the jury to give little weight to his evidence as to the speed of his car.

The jury viewed the premises and were able to interpret the testimony of plaintiff and determine whether she was entitled to credit when she testified that she looked north as her car was approaching the intersection and she could see but about four hundred feet, within which distance the car of the defendant had not then appeared. From the view of the premises the jury would understand that the distance which plaintiff could see to the north depended entirely upon the location of her car at the time she looked, and it was the province of the jury to determine whether plaintiff was in the exercise of ordinary care in that respect, although she might have seen to the north a much greater distance had she looked at another time. The growing corn which obstructed the view at the intersection was at the time of the collision about its full growth, and although the exhibit in the case shows that the corn stubble was located a certain distance from the center of number 7 highway, at the time of the trial, the jury would have common knowledge that the overhanging leaves of the corn stalk would further affect the visibility as the cars approached this intersection.

We have considered all of the errors assigned in the brief of counsel for defendant, which were the only errors urged upon oral hearing before this court, and we find and hold that the trial court did not err in any respect claimed by appellant. So finding, the judgment of the trial court must be, and the same is, affirmed.

Judgment affirmed.

ROBERTS and CARTER, JJ, concur.